Morning, everyone. Once again, Judge Callahan and I would like to welcome and thank Judge Block from the Eastern District of New York who is sitting with us today. Welcome again and thank you, Judge Block. Thank you for having me. The cases will be called in the order listed on the docket. The first case, Lindsay v. City of Pasadena, has been submitted on the briefs. The next case, Reynoso Perez v. Garland, has been vacated. The first case on calendar for argument is Young v. Tyco 5 Products. Counsel for Appellant, please proceed. Good morning, Your Honor, and may it please the Court. Liat Roma, Williams, and Connelly, on behalf of the Defendant Appellants, I'd like to reserve four minutes for rebuttal. Counsel, please be reminded that the time shown on the clock is your total time remaining. Thank you, Your Honor. 28 U.S.C. 1442, the Federal Officer Removal Statute, as amended in 2011, allows removal of a state court action to federal court if the action is for or relating to the defendant's acts under federal direction. Here, ChemGuard's notice of removal raised to federal defense that plaintiff's injuries were caused, at least in part, by acts that ChemGuard undertook under federal direction and for which the company has a federal defense. The question in this appeal is whether ChemGuard's federal defense allows removal even though plaintiff's complaint does not mention the company's acts under federal direction as a cause of their injuries. The answer is yes, and the District Court erred in holding otherwise and remanding the case to state court. As a matter of statutory interpretation, a defense based on conduct the defendant undertook under federal direction is clearly a matter relating to a civil action, whether or not the factual predicate of the defense is mentioned in the complaint. Let me ask you this, Counsel, if you are correct and the Young's motion to remand presents a facial challenge to jurisdiction, shouldn't we ignore all the evidence you submitted and limit the review to the non-conclusory allegations in your notice of removal? Sure, and our notice of removal did cite to a number of publicly available evidentiary items, and then in our notice of removal, excuse me, in our opposition to the motion to remand, we did include more factual evidence there to support it. But I agree with you, Your Honor, that plaintiffs do not present a factual challenge or factual attack on any of the allegations that we made in the notice of removal. This is a facial attack, so this court should accept the defendant's factual allegations as true, and it's simply a matter of, as a matter of law, do the allegations support finding subject matter jurisdiction. Excuse me, I'm sorry, you're not saying that you can make any factual allegation you choose and confer jurisdiction on us by doing that, are you? Of course not. That's the subject matter basis to it, right? Sure, of course not, Your Honor. It's the same standard as would be for a plaintiff's complaint if it were being challenged under a Rule 12b-1 motion for subject matter jurisdiction, which is to accept the factual allegations as true, and it's a plausibility standard essentially under Rule 8. Is it plausible based upon these facts that there's subject matter jurisdiction here? You think you're satisfied with the plausibility standard, but it's kind of a remote stretch here that you're asking us to engage in, and I have some concern about whether or not you really do meet the plausibility standard. I think we do meet the plausibility standard, and I think the most obvious evidence of that is that the exact basis that we're using for removal here is the same basis for hundreds of other plaintiffs' complaints in the MDL that's been established related to firefighting foam H-117. That's not exactly true, I don't think. I mean, here you have a discrete case based upon the fact that this is just not related at all to the underlying water issues you talk about. It's a separate, separate drug that's just the basis of their lawsuit that has nothing to do with what you claim. So our position in the notice of removal is that PFAS from MilSpec AFFF used at Luke Air Force Base got into the water, and that plaintiff was exposed to that water in the course of his firefighting. That theory of liability that a plaintiff can have suffered personal injury through the result of exposure to PFAS in water by living in close... That's just related to civil matters here. It's a whole different ball of wax. How do you bridge that gap? I don't understand that. So it's the same class of chemicals. It's the same chemicals, right? So plaintiff alleges that he was injured by exposure to PFAS and AFFF. We're saying if that is true, he was exposed to PFAS and AFFF from a different source. And what I was trying to say is that that theory of liability that you could have suffered a personal injury by being exposed to PFAS and AFFF through the water, that is the basis of hundreds of other plaintiffs' complaints in the AFFF area. Let's talk about those cases. Don't those cases involve direct allegations of contact with the groundwater as opposed to the indirect contact that you are asserting as the defense? Those are directly alleged to be caused by groundwater contamination by the plaintiffs, not the defendants in those cases, correct? Yes. The plaintiffs in those cases make allegations that groundwater in their vicinity was contaminated with PFAS. Here in our notice of removal, we make that same allegation. And so plaintiff's allegation in those cases is accepted as true for purposes... It's just a plausibility standard in their complaint. And same for us. It's a plausibility standard that PFAS has contaminated the groundwater in the vicinity of Luke Air Force Base. And even if it weren't, even if we did have some sort of factual burden here, we have presented facts in the complaint for our expert affidavit that's available in the record showing that PFAS from MilSpec AFFF used at Luke Air Force Base has contaminated the groundwater in the vicinity. Let me ask you this, counsel, because it does seem to be a little bit of a line drawing that we have to engage in. And so let me just take a hypothetical that's a little further out to sort of understand this. Suppose a firefighter spends her entire career working with commercial AFFFs, I guess you call that triple F or what did you call it, in an area with no MilSpec AFFFs in use. And if she moves to Goodyear for retirement and is diagnosed with cancer after a few weeks, could ChemGuard argue that the groundwater may have contributed to her under the government contract or defense? I think it would depend, obviously your hypothetical is focusing on the amount of time that you spend in one place versus another. And I think whether or not those facts would be obvious from the complaint or something that defendants would be able to figure out on their own for purposes of removal based upon the complaint would depend, it would vary. 1442 removals can happen at the time of the complaint. They can also happen later in time if there are facts that come about. Well, but if you say that it could be there, I mean there is so remote. So that seems like an easy hypothetical for me. Your facts are a little bit closer, but we have here a firefighter that has been immersed in this one kind, which is not the groundwater. That, you know, he's covered at fire scenes, cleaning things up. I mean, he might as well have an AFFF suit that he's walking around in. So there still is some remoteness, but I guess I have a, if you think the other one makes a claim, then you're kind of going a little too far for me. That isn't, but now just maybe you can answer me a question. Let's assume that you stay in state court. Do you still have all the same defenses there that you do in federal court? Yes, Your Honor. And in fact, we are currently litigating the government contractor defense in state court. And the very purpose of 1442 is for that federal defense to be litigated in federal court. Plaintiff has served discovery requests where they seek information related to our sales of MilSpec AFFF to Luke Air Force Base. So if I understand you correctly, just, and this is, and I don't, that's what I kind of, let's just say we don't think that we affirm the district court because we think you haven't met the plausibility. You're not robbed of any defense in state court as to still allege that the water could have caused it in the federal contractor. Is that correct? But what you lose is then you don't, you're not part of the MDL cases. What we lose is the validity of that federal defense being assessed in federal court, which is the basis for 1442 and the Supreme Court in this course have repeatedly recognized. Does it work in federal, does it work in state court the same way? Can you, do you still get the same benefit in state court? I'm not sure of what Arizona's law is on whether or not we would, we would get the benefit of the government contractor defense there. I do want to go back to the, the question you raised the hypothetical and some of the facts there. While these aren't in the record, I mean, firefighters do wear a large amount of protective gear when working with AFFF and AFFF the way that is used, it is proportioned 3% to 97% with water. And so it's not the case that firefighters are being drenched in AFFF and is, and as far as the plausibility point, I would just like to reiterate again that number of plaintiffs have raised this exact theory of liability in their complaints and those complaints we have not. Are some of these plaintiffs in the MDL not even firefighters though? Are they just people that live in the area where the groundwater is contaminated? Yes, there are hundreds of people who just live in the vicinity of the, of a facility where the groundwater has been contaminated. So they're not firefighters like this guy? There are, they're both. So the MDL includes thousands of cases, over half of them are firefighters and then hundreds of them are people who live in the vicinity of a military base. And I think that part, this latter part is what proves our plausibility standard, right? So plaintiffs are saying it's not plausible that someone would be injured just through exposure to PFAS in water. But hundreds of plaintiffs have alleged in their complaints that they were simply, they were injured simply by exposure to PFAS in water. Counsel, counsel, I don't think that's correct. I don't think plaintiffs are saying that one cannot be injured through the chemical in the water. They're saying in this case, he was not injured through the chemical in the water, but through direct contact with it. And that your theory is that it migrated some five miles into water that he would have used. And the question is, is that plausible? To me, this is a different allegation than the allegations that are in the MDL that directly say they were contaminated by groundwater. So to respond to that, plaintiff does not say that he was not injured from PFAS from MilSpec AFFF. He is simply silent on the point. And complaints are broadly construed in a plaintiff's favor. And this complaint could easily be construed to incorporate allegations of MilSpec AFFF. You're saying we should, we should construe plaintiff's complaint to say something it didn't say. Is that consistent with Rule 11? No, Your Honor. What I'm saying is that in discovery, as this case would go forward, plaintiff certainly wouldn't be barred from seeking recovery for damages related to MilSpec AFFF at this point. He has not disclaimed it. And therefore, if plaintiff's complaint is broadly construed going forward, he certainly wouldn't be barred from trying to seek recovery from MilSpec AFFF at this point. His complaint is simply silent on the question of was he exposed to PFAS from MilSpec AFFF through the water? Ms. Rohn, let me ask you a practical question or two, if I may. You're a very good lawyer. You have a very good law firm. You want to be in the federal court. And I assume you made some sort of a judgment call because you didn't have to seek removal to the federal court. You could have stayed in the state court. So your motivation in doing that, I surmise, was because you want to be part of the larger MDL mix or did you have some other particular reason? If you knew you were not going to be part of the MDL mix, would you have still sought removal? Certainly, Your Honor. The government contract of defense is a valid defense to this case. It does not need to be a defense to all portions of plaintiff's claims in order for the case to be removable. So to Judge Rawlingson's point, no, it would not bar his entire recovery if he was, in fact, injured through exposure to PFAS and commercial AFFF, but it would bar part of his recovery. You seem to be unsure whether you can assert that defense in state court. I'm not unsure at all about it. You absolutely can assert that defense in the state court. So my concern is that if this gets to be part of the MDL mix, it sort of puts the plaintiff in a bad spot because there's going to be discovery, it's going to be a protracted litigation. And if you're dealing with that reality as a practical matter and you have a questionable basis for removal, is there some sort of common sense or even legal basis to say, let's keep it in the state court? Removal rights are absolute under 1442. That's been recognized by the Supreme Court and by this court. If we've met the statutory requirements, we are allowed to remove at this stage. And it is exactly for the purpose of the statute being that we can have the validity of our government contract of defense assessed in federal court. I don't know what difference that makes. Look, the question is whether you have met the standard and you have a stretch here, you have a really serious plausibility issue here that we have to resolve. But just as a practical matter, it just seems to me that the plaintiff brought this case to state court legitimately, and I don't know why it kind of remained there unless there's really some compelling reason that does justify a warrant removal. I don't quite frankly see it, but you can tell me if I'm wrong. Yes, the compelling reason is our federal defense. We are litigating our federal government contractor defense, and that is a defense that depends on federal common law. And we are litigating that defense right now in state court. As I pointed out, plaintiffs are seeking information related to our sales of MilSpec AFFF in state court. And so we believe that the validity of that defense needs to be assessed by a federal court. And so we are suffering harm right now in the practical aspect of having to litigate that federal defense. If the facts have evolved to support your theory later on through discovery or whatever, can you not remove it to federal court at that time? Maybe it's a little bit premature and a little bit chancy at the present time. We could remove later in time, but we believe that we're entitled to remove now under the statute because we meet all of the requirements. This is an action that relates to Kenhardt's conduct under federal law because Kenhardt has validly asserted a federal defense to the complaint. Now, it is an alternative cause defense, right? It is not one that you're going to see from the face of plaintiff's complaint, and it doesn't need to be. As this court and the Supreme Court have recognized, federal defenses for purposes of 1442 removals can appear based upon the defendant's allegations. They don't need to be based solely upon the plaintiff's complaint. I think that's correct. I think that's correct, but that doesn't really go to the issue of whether this is a bit of a stretch under the plausibility standard. All right, Counsel, you've exceeded your time. We'll give you a minute for rebuttal. Thank you, Your Honor. Counsel. Good morning, Your Honors. Good morning. I am pleased to report Jason Burge arguing on behalf of plaintiffs and appellees Landon and Heather Young. And as the district court correctly found in this case, Kenhardt fails the nexus element of the test for federal officer removal because the acts forming the basis of the state suit involved Kenhardt selling commercial phones to plaintiff's firefighting department, to which plaintiff was exposed while performing services as a firefighter. And those acts, quote, were not performed pursuant to a federal officer's orders. So the groundwater defense cannot serve as the basis for federal removal. Why not? Because we are not alleging any harm caused by the groundwater. We are alleging harm caused by commercial foam, which as Your Honors recognized earlier, our client alleges he was covered in, that he was encouraged to paint rooms and therefore exposed to through dermal exposure and through inhalation. Well, but if let me, can you address under the Supreme Court's decision in Jefferson County versus Acker? Isn't it true that, quote, suits under federal officers may be removed, unquote, under the federal officer removal statute, quote, despite the non-federal cast of the complaint, unquote, undercutting your focus on the allegation in the Young's complaint? Doesn't that cut against you? No, because the Supreme Court in Jefferson County, this is a direct quote, stated that the nexus element requires that the officer must show a nexus, a causal connection between the charged conduct and the asserted official authority. If we hadn't said a word about federal law, but they had sold mil-spec foam to his firing department and he was using mil-spec foam in his fire department, then correct. The conduct we're complaining about, the sale of the foam to his fire department would have a federal connection. But here, the conduct we're complaining about is the sale of commercial firefighting foam. It has no federal connection whatsoever to his fire department. Well, OK, I'm not. Let me ask this question. Can that foam come from any source other than the groundwater? I mean, is there a separate basis for that foam? Well, the ground water, I mean, if there's if you acknowledge the fact that it has to come from the groundwater, even though it's a little commercial label, doesn't that satisfy the necessary nexus? Well, the foam doesn't come from the groundwater. The foam is sold in large canisters and the foam is provided to the fire department. They put it on the truck, they hook it into the truck and they spray the foam. And it is true that they have to mix the foam with other things when they do it. But the foam itself is full of PFAS. And when he is training, he is routinely being exposed to the foam. When he is firefighting, he is routinely being exposed to the foam. I think there's a distinction between that and the water. And nobody has claimed, to my knowledge, and certainly there's nothing in this record, that the groundwater is causing exposure through dermal exposure or through inhalation. It's solely through consumption. And that's not what we're alleging in this case. OK, counsel, but you're saying you're focusing on the complaint. But another case I want you to address is, I don't know how you say it, Leidy or Leedy. Did the district court err by basing its analysis almost exclusively on the allegation in the Young's complaint rather than on the allegations of ChemGuard's notice of removal? Aren't we supposed to look at the notice of removal and decide whether it's plausible based on that? You can look at the notice of removal. Well, not whether we can. Aren't we supposed to focus on that as opposed to the complaint? Sure, but the key is, what does the notice of removal say about their actions relating to the charge of conduct? They can obviously expand on the charge of conduct in the notice of removal, but it still has to reflect the conduct that's at issue in the complaint. What we're complaining about is, they're putting these PFAS into commercial firefighting foams that they're selling to fire departments like Mr. Young's. And that is conduct that has nothing to do with any federal complaint. And what they're saying is, well, don't worry about what we sell in commercial firefighting foams. Over here, we poisoned the groundwater. And therefore, all of the firefighters like Mr. Young can't bring lawsuits based on what we do in our commercial capacity because we've separately poisoned the groundwater. I guess I don't understand what you mean by commercial capacity. Where does the foam come from? It has to come from some source. There seems to be silence about that, but it seems to me that all of it owns its genesis from the underlying groundwater. Can it come from a separate source? Well, I don't believe there's any evidence that they created the foam using groundwater that was contaminated by PFAS. The foam is a commercial product that they – or it's a product that they create, and they put these PFAS chemicals into it, and then they sell it off to firefighters. And what they're saying is that they sell the commercial foam to us. It contains the PFAS. They've separately sold the mil-spec foam to the Air Force Base. When the mil-spec foam was used at the Air Force Base, it got into the groundwater. And therefore, the groundwater around the Air Force Base contains the mil-spec foam. But they're not saying that the groundwater is in the foam they sold to the firefighting department. But I think the key to this is if you look all the way back to Jefferson County, you have to start the nexus analysis by identifying what are the acts challenged. And here, again, it's the manufacturer's sale and provision of warnings about the commercial firefighting foam. ChemGuard, in its capacity as a private manufacturer, sold these firefighting foams containing PFAS to the city of Goodyear. It knew that firefighters like Landon Young were going to use these foams. The training exercises in ordinary firefighting and in painting the room. Indeed, he alleges he was covered head-to-toe with these foams on a regular basis. And as a result, he developed testicular cancer. Should we be concerned about companies like ChemGuard unfairly using the federal officer removal statute and the government contractor defense to immunize their commercial business from tort liability to the detriment of their competitors and customers? And to the detriment, ultimately, of firefighters and other people who are perhaps the employees of their customers who are exposed to these chemicals. Because that, I think, is what's going on here. I think if you look at the breadth of what ChemGuard is claiming here, it's really quite remarkable. What they're saying is that they sold these PFAS and commercial firefighting foams for many years. But they're contending that nobody in the entire state of Arizona can sue them for exposure to these commercial foams because the groundwater is so contaminated by this separate mil-spec foam they sold to the Air Force that anyone who drinks it will contract cancer. So ChemGuard has a federal officer defense apparently because they poisoned the entire population of Arizona. That's not how the federal officer defense is supposed to work. When parties are challenged for non-federal conduct, which is what we're talking about here, they can't defend or remove based on implausible allegations about separate federal conduct and claiming that that's really to blame. They've got to defend the specific conduct that is challenged in the state court lawsuit. And I think here, I think it's important to focus that they're bringing an alternate causation defense before they're bringing a federal officer defense. If you look at the Baker decision, which they cite for the alternate causation defense, it describes an alternate causation defense as showing that, quote, in addition to disputing the plaintiff's affirmative showing, the defendant can present evidence that some other cause accounts for the injury. In other words, you've got to start by demonstrating that Mr. Young has not been absorbed PFAS through dermal exposure inhalation. And then you can say he instead got it through the ingestion. But what that defense is contending is that Mr. Young can't prove causation based on the allegations in the present complaint. That no causation defense, that's not a federal contractor defense. That's a simple state law defense. If it's true that Mr. Young didn't absorb PFAS through dermal exposure inhalation, then the current complaint fails. But if he did absorb PFAS through dermal exposure inhalation, then the fact that Kengard claims he also absorbed it through ingestion of groundwater is not a defense. If you're accused of poisoning somebody, you can't claim that it's a defense if you poisoned them a second time. That's not alternative causation. That's additional causation. That's not a defense. What's your response to opposing counsel's observation that this same allegation is being recognized in the thousands of cases that are in MDL litigation currently? Sure, those are plaintiffs who specifically allege that they were harmed by drinking groundwater infected with PFAS. And I think to that point, Judge Block was exactly right. If at some future time in this case we were to change our allegations and plead that we were harmed by the groundwater, that would be the other paper that would allow Kengard to remove at that time. Just like if at some future time in the case we brought claims under the federal environmental laws, that would be another paper that would allow them to remove under federal question. But you have to look at what's in the complaint. And the complaint as it stands now has no basis for federal jurisdiction and says nothing about the acts that Kengard is claiming it took under federal officer authority. But the law says that you're not relegated to just the complaint. And I think that your adversary is quite correct that you can look at what might be not in the complaint, but the failures alleged in the removal papers. Sure. And I think if you looked at the military asbestos cases, you could see how that might be applied. So I might have a complaint complaining I was exposed to asbestos. And they might say in their removal papers, well, you were exposed to asbestos because you worked on a naval ship and the Navy required us to install asbestos in the naval ship. And that's the basis for the removal in Yoakum or Light V. Crane. Well, let me take the devil's advocate position. So if you're correct and the motion to remand presents a factual challenge to the jurisdiction, isn't your failure to submit evidence countering Kengard's factual assertions fatal to your position? Well, I don't think so, because at the end of the day, Kengard has the factual burden, not us. So as in any case where the other party has the factual burden, it's not our obligation to come forward with facts. It's their obligation to come forward with facts. Be that as it may, though, when we have to assess a jurisdiction, we can review and look at other papers and other documents. And you could have submitted something, I guess, to support your position, and then we would be able to consider that as well. But you chose not to do that. Well, I think only because we don't have any evidence about the groundwater full stop. We're at the beginning of this case. What we have is a lot of evidence about the PFAS that he was specifically exposed to through his work, all of which is specifically laid out in our complaint. But we don't contend that he was exposed to any PFAS through the groundwater, and therefore we haven't developed any evidence about that. So I don't have any facts to present to the court about the groundwater, because frankly, that's not our allegation.  We believe he was harmed because he used these specific phones in the course of his employment as a firefighter that contained the PFAS. And that's the basis for our allegations. Now, I think there's one kind of remarkable admission in Kengard's reply brief. It states that, quote, That's kind of a remarkable admission because it suggests that no defendant has ever tried to remove a case based on alternate causation theory in the Ninth Circuit. But it also demonstrates why this theory doesn't work. This federal contractor defense is one step removed from the alternate causation defense, and defendants have historically recognized they can't remove based on an alternate causation theory. They have to remove on a direct federal contractor defense to the acts challenged in the complaint, and that you don't have here. So I think the district court was right in this case that on the present complaint, Landon Young has not alleged any groundwater exposure. He has specifically alleged his exposure is through dermal exposure to an inhalation of the firefighting foams. And I think the district court analysis of the Nexus test should be affirmed on that basis. I also think it's notable the difference between this case and the two district court PFAS cases cited by the defendants. That's Nestle and IO. In both those cases, the plaintiffs allege that defendants allowed the chemicals to leach into groundwater. And in both those cases, the plaintiffs had specifically alleged either in that complaint or in a separate complaint that both commercial and mil-spec foam had leached into the groundwater. There's no way to distinguish the federal and non-federal conduct in those cases, whereas here, we complain about the manufacture and sale of private commercial firefighting foam sold to municipal firefighting agencies. Those have nothing to do with federal mil-spec foam. It's an entirely different exposure pathway. Now, I think I can briefly address the other elements of the test, which we didn't really talk about so much so far, although I think they are pretty well covered in our brief. We argue that ChemGuard is not a person acting under a federal agency when it manufactures mil-spec foam according to federal specifications. In the Riggs case, which was authored by Judge Rawlinson, this court noted that simply manufacturing a product according to federal regulations doesn't qualify as acting under a federal agency. That's, we argue, the same facts as here. And further, in the Ninth Circuit, it's true that the federal contractor defense only applies to the manufacture of, quote, military equipment. There's nothing military about this foam produced by ChemGuard. Even the mil-spec foam is regularly sold in civilian airports all over the country. It's true it's called mil-spec foam, which stands for military specification, but while ChemGuard wants to focus on the military part, the court should focus on the specification part. This is simply firefighting foam. It's an ordinary commercial product designed according to specifications created by the U.S. military. That doesn't make it into military equipment any more than the paint in Nielsen, which complied with the U.S. military specifications for painting aircraft carriers with military equipment. It's standard civilian equipment, and in the Ninth Circuit, ChemGuard is not entitled to a federal defense for manufacturing it. So with that, unless there are further questions from the panel, I'll cede the remainder of my time. All right. Thank you, Counsel Rebuttal. Thank you, Your Honor. I just want to pick up on Judge Callahan's point that under ACCR, this complaint can be removed despite the non-federal nature of the complaint. The remaining portions of ACCR that opposing counsel referred to are simply not relevant at this point where there is a focus on a causal connection because the statute was amended in 2011 to broaden the class of cases that are now removable. Now this court merely needs to look at is the action related to an act that ChemGuard took under federal office. And the words relating to this court and the Supreme Court have interpreted too broadly to mean is there some sort of connection or association. I also want to point out that plaintiff's complaint doesn't just solely focus on dermal contact. It does refer to the plaintiff's consumption of defendant's AAA products. But again, it doesn't really matter what the plaintiff's complaint is. It's a matter of have we plausibly alleged a federal defense at this point. And to be clear, we don't need to win our defense at the removal stage. It merely needs to be plausible. Plaintiff's claim is that PFAS and AFFF caused him injury. It's not a claim. A claim does not get down to the granular level as well as it is an exposure through groundwater or an exposure through dermal absorption. It's just a matter of plaintiff's claim. And plaintiff's claim here is that PFAS from AFFF caused him harm. And so the question is, is there a connection between PFAS and AFFF and the federal defense that we've alleged here? And we do believe that it is. I also just want to briefly correct the record on one point. So opposing counsel suggested that if you were to allow removal here, that it's basically saying that ChemGuard can remove any case anywhere in the state of Arizona because MilSpec AFFF was used there. That's clearly not true. And opposing counsel knows that because he is counsel in a case that is remaining in state court in Arizona called the Forbat case because there was not a military base located in the vicinity of that plaintiff. What we look at here in assessing these removals is whether or not there is a military base in the vicinity such that the groundwater located near that military base has been contaminated with PFAS. And that's what we've alleged here. Those factual allegations have not been contested. And our expert declaration clearly sets that forth. That the Goodyear water supply that plaintiff was presumably and he does not deny exposed to in the course of his firefighting duty, that water in Goodyear has been found to have PFAS levels. And that the PFAS in that water came from Luke Air Force Base. All right. Counsel, you've exceeded your time, your rebuttal time. We understand your argument. Thank you to both counsel for your helpful arguments in this challenging case.
judges: RAWLINSON, CALLAHAN, Block